*In re* MARTA VÉLEZ ECHEVARRÍA.

*Número:* 5529    *Resuelto:* 8 de diciembre de 1989

*Govén D. Martínez Surís, Director de la Oficina de Inspección de Notarías; Marta Vélez Echevarría, pro se; Arturo Cintrón García,* Comisionado Especial.

## I

PER CURIAM: El 8 de abril de 1988 el Director de la Oficina de Inspección de Notarías, Lcdo. Govén D. Martínez Surís, nos presentó por conducto del Juez Presidente Señor Pons Núñez un memorando expositivo de que la notario Marta Vélez Echevarría no había rendido los índices corres-

pondientes a las fechas siguientes: 17 de noviembre de 1985; 24 de noviembre de 1985; 1, 8, 15, 22 y 29 de diciembre de 1985; 5, 12, 19 y 26 de enero de 1986; 2, 9 y 16 de febrero de 1986; 7, 14, 21 y 28 de diciembre de 1986; meses de enero, febrero y diciembre de 1986, y meses de enero, febrero, marzo y abril de 1987. Nos comunicó que desde el 4 de agosto de 1987 la notario había sido notificada por carta y se le había concedido hasta el 31 de agosto de 1987 para subsanar esas deficiencias. A dicha carta le fue unido un informe suscrito por la Sra. Drusila Ramos, oficial de la inspección de notarías, dirigida a otra oficial, la Sra. Ivonne Rosario —en que se detallan las fechas de los incumplimientos— donde la primera consigna: "Antes de proveerle este informe, he verificado bien que la información que le estoy suministrando es la correcta." Memorando de 4 de agosto de 1987.

Mediante Resolución de 21 de abril de 1988 concedimos a la notario Vélez Echevarría término para que sometiera los referidos índices y, además, para que mostrara causa por la cual no debería ser disciplinada. En sus comunicaciones de 29 de abril y 22 de junio de 1988 negó dicho incumplimiento, incluso la recepción de la carta de 4 de agosto de 1987.

Referido el asunto al licenciado Martínez Surís, éste se reafirmó en que los índices nunca fueron recibidos, y que aun cuando *algunos* se extraviaran por correo, dicho funcionario no comprendía "la posibilidad de que se perdieran todos los que dice la notario envió a su debido tiempo[,] correspondientes a las fechas indicadas, *a menos que fueran remitidos tardíamente en un paquete*". (Énfasis suplido.) Memorando de 14 de junio de 1988.

La notario reiteró su posición. Ante esta inexplicable discrepancia, por vía de excepción, designamos Comisionado Especial al Lcdo. Arturo Cintrón García, ex Juez Superior, para que previa vista evidenciaria nos rindiera un informe. El 13 de marzo de 1989 cumplió su encomienda. Notificado

dicho informe a las partes, ninguna compareció a objetarlo. Resolvemos.

## II

Con vista a la prueba documental y a los testimonios del licenciado Martínez Surís, la señora Ramos y la notario Vélez Echevarría, el Comisionado Especial formuló las siguientes determinaciones de hecho, avaladas por nuestra apreciación de la transcripción de evidencia:

1. La Lic. Vélez Echevarría fue recibida como abogada en la Facultad de Derecho de la Universidad Interamericana el 6 de junio de 1976; admitida al ejercicio de la profesión el 31 de mayo de 1977, y al notariado el 24 de junio de 1977.

Antes de su recepción como abogada, realizó sus comienzos en el servicio público en la oficina de estadísticas del Departamento de Obras Públicas; luego como analista de préstamos en la Corporación de Crédito Agrícola.

Ya abogada, sirvió como decana de administración y asesora legal de la Universidad de Puerto Rico desde el año 1978 hasta el 1983. De allí pasó a la Universidad Interamericana en la oficina de recursos externos. Dada su formación profesional, ayudó allí en el análisis y aplicación de las normas en el uso de fondos federales.

Desde 1985 trabaja para la Compañía de Desarrollo Comercial de Puerto Rico en calidad de directora auxiliar de administración hasta el año 1987, en que comienza a dirigir en propiedad la oficina de asuntos legales, y en 1988 fue nombrada subdirectora ejecutiva interina de esa compañía.

2. Su práctica de la notaría ha sido notoriamente exigua. Durante el período que comprende la investigación de su notaría, ante ella se han otorgado dos affidavits [sic]: el número 1021 de 13 de febrero de 1987, suscrito por Elba Rivera, que es una declaración para solicitar un préstamo del sistema de retiro del E.L.A.; y el número 1022 de 24 de abril de 1987, suscrito por Rafael Carrasquillo, relativo a un memorandum de costas en el caso *C.D.C.* v. *Gloria Quintana*. No se otorgaron escrituras durante el mismo período.

Antes de 1985; es decir, desde los comienzos de su carrera en 1977, su práctica de la notaría fue igualmente escasa. "De

hecho —declara la letrada—, el primer protocolo mío es finititito, creo que de una o dos escrituras del primer año." (Pág. 35 de la transcripción; ver también el memorando del inspector de protocolos, Lic. Antonio Maldonado Seda, dirigido al Director de Inspección de Notarías, el 28 de abril de 1988, obrante en el expediente de este asunto.

3. Aunque no se presentó prueba afirmativa de su buena conducta, es lógico determinar que la suya es incuestionable. Los cargos que ha venido ocupando son, de suyo, las mejores credenciales de su conducta.

4. Por razón del cargo que ocupa la letrada en la actualidad, se le hace imposible litigar ante los tribunales; esa función es delegada en los demás abogados que trabajan bajo su supervisión en la Compañía de Desarrollo Comercial.

5. Para las fechas a que se contrae el informe del Lic. Martínez Surís al señor Juez Presidente —desde noviembre de 1985 a abril de 1987—, la letrada Vélez Echevarría ha residido en el Condominio Venus Plaza C, apartamento 1101, calle Costa Rica número 160, Hato Rey, Puerto Rico, 00917. (Ver: pág. 42 de la transcripción de su testimonio; y carta dirigida al Lic. Bruno Cortés Trigo, de 9 de mayo de 1988, recibida en la Secretaría de este Tribunal el 19 de mayo de 1988, a la 1:29 P.M., en cumplimiento de la Regla 8(j) del Reglamento del Tribunal Supremo).

6. *El 4 de agosto de 1987 la letrada Vélez Echevarría fue notificada por carta que le remitió la señora Ivonne Rosario sobre los incumplimientos en que había incurrido en cuanto a los envíos de sus índices notariales.*

El anterior aviso fue *dirigido a la dirección conocida de la notario, que es la misma descrita en el hecho anterior.* Aneja a esta carta el informe suscrito por la señora Drusila Ramos, sintetizado en la introducción de este informe, bajo el número 1. El director de la inspección de notarías no recibió contestación a esta carta. (Ver: pág. 22 de la transcripción).[2]

7. El modus operandi de la inspección de notarías para la recepción de los índices notariales, consiste en señalar con un

[2] Ante la negación de la notario de haber recibido ese aviso de 4 de agosto de 1987, *vale concluir como cuestión de hecho, que el correo no devolvió a la señora Rosario la carta que lo contenía.* (Ver: págs. 8 y 22 de la transcripción.)

reloj (reloj "ponchador", le llaman), la fecha en que se recibe cada índice, que se coloca luego en un cajón clasificado por letras, de la A a la Z, en que se reparten los índices de acuerdo con los apellidos de los notarios. A cada oficial de la inspección de notarías se le asigna una letra. Examinado cada índice, el oficial anota en un formulario ad hoc de la Administración de Tribunales (OAT 843)(³) la recepción de cada uno. Si el índice no se ha recibido, se pone un punto rojo bajo la fecha que corresponda; si el índice llega tardíamente se pone una marca de cotejo(⁴) sobre el punto rojo. (Ver: págs. 26 y sgtes. de la transcripción).(⁵)

8.  Pese a que el ofrecimiento de prueba en la vista se había circunscrito al período señalado en el hecho 5 (ante), la notario intervenida había incurrido en las mismas deficiencias en el año 1984. (Ver: pág. 22 de la transcripción y exhibit 2, OA[T] 843).

---

(³) Exhibit 2. Debe aclararse que este exhibit fue marcado originalmente como exhibit 1; luego se cambió a exhibit 2.

(⁴) El comisionado incurrió en descuido ling[ü]ístico: usó la voz *vírgula* [sic] en el transcurso de la vista en sus méritos; lo que correspondía es *marca de cotejo*; el cómodo "Check mark" entre nuestros hablantes del español.

(⁵) El exhibit 2 (OAT 843), es lógicamente, una fotocopia del original que obra en la oficina de inspección de notarías. Así fue admitido en la vista en sus méritos, sin objeción de la notario intervenida. Es copia fiel con excepción de los puntos rojos que se destacan más, justamente por el color.

Para facilitar a los señores jueces del Tribunal el examen de ese exhibit, el comisionado revisó el original. Los puntos rojos figuran en las siguientes fechas:

*Año 1985*
Agosto: en los días 4, 11, 18, y 25
Septiembre: en los días 1, 8, 15, y 22
Noviembre: en los días 17 y 24
Diciembre: en los días 1, 8, 15, 22 y 29

*Año 1986*
Enero: en los días 5, 12, 19, y 26
Febrero: en los días 2, 9, y 16
Diciembre: en los días 7, 14, 21, y 28

*Año 1987*
Enero: en los días 4, 11, 18, y 25
Febrero: en los días 1, 8, 15, y 22
Marzo: en los días 1, 8, 15, 22, y 29
Abril: en los días 5, 12, 19 y 26
Mayo: el día 3

9. *La letrada Vélez Echevarría admitió en su testimonio, de manera imprecisa, que: "Si bien es cierto que ha habido en uno de los casos una dilación en la rendición de los índices, no es cierto que yo haya dejado de rendir esos índices."* (Ver: págs. 36 y 37 de la transcripción).

10. Sin olvidar que el sistema de correos es falible, como falibles son los actos humanos, *el comisionado no puede concebir la repetida incomunicación postal entre la letrada y la Oficina del Director de Inspección de Notarías, según alega ella.* Puede concebirse el extravío de unos índices, o de alguna carta, pero no el extravío de tantos índices, y que a su vez se extravíe la carta de 4 de agosto de 1987, que está vinculada con los aparentes extravíos de toda una serie de índices.

11. El testimonio de la señora Drusila Ramos es de entera credibilidad, tanto más cuando dice que a la fecha en que se celebró la vista en sus méritos de este asunto, los índices de la notario no se habían recibido en la inspección de notarías. (Ver: pág. 27 de la transcripción.) Lo que queda corroborado por las alegaciones de la notario, contenidas en su *Contestación a Resolución,* dirigida al Hon. Tribunal el 29 de abril de 1988, en que acompaña *en bloque* "copia de cada uno de los índices mencionados según constan en los registros y archivos de esta Notario." Quiere decir, en primer lugar, que las copias de los índices son remitidos por primera vez al Tribunal Supremo, y no a la inspección de notarías, como correspondía hacerlo. Pero a[u]n cuando se hubiesen remitido en esa fecha a la inspección de notarías, *tal remisión en bloque resultaba tardía.*

12. Es también digno de crédito lo atestado por el Lic. Govén Martínez Surís, en las porciones en que él declara sobre lo que le consta de propio conocimiento; por ejemplo, cuando asegura que la carta de 4 de agosto de 1987, dirigida a la letrada intervenida, no fue devuelta a la inspección de notarías (Págs. 8 y 9 de la transcripción); o cuando declara: "Nosotros obtuvimos copia de los índices cuando ella [la letrada Vélez Echevarría] contestó al Tribunal Supremo y me mandó copia a mí de la contestación e incluyó copia de esos índices que había

suministrado al Tribunal Supremo cuando se le requirió la contestación". (Pág. 20 de la transcripción).(6)

13. *Las deficiencias notariales de la letrada s[ó]lo pueden atribuirse a su evidente inactividad notarial. Esa inactividad unida a sus otros quehaceres profesionales le produjeron desligamiento con la habitualidad del envío de sus índices.*

14. *Ante una práctica notarial tan microscópica, y por la naturaleza de los objetos de s[ó]lo dos affidavits [sic] otorgados, cabe concluir que no se lesionaron intereses ajenos.*

15. Ha estimado el comisionado que aunque su intervención estuvo circunscrita al período repetidamente señalado, la misión que le ordenó el Honorable Tribunal quedaba mejor cumplida al informarle que la letrada Marta Vélez Echevarría ha estado cumpliendo fielmente en lo que va del año 1989, con su deber de informar toda la actividad notarial generada en su despacho.(7)

---

(6) El comisionado dio valor al testimonio del Lic. Martínez Surís en cuanto tuvo de orientador al exponer la política o directrices de la inspección de notarías, seguidas en los casos de deficiencias notariales; sobre todo en lo relativo a la buena disposición del director para escuchar y considerar los planteamientos de los notarios antes de referir sus casos definitivamente al Señor Juez Presidente.

(7) Este dato fue investigado con posterioridad a la vista, en la Oficina del Director de Inspección de Notarías. Informe del Comisionado Especial, págs. 2–7.

## III

Coincidimos plenamente con la aquilatación de la prueba y apreciaciones del Comisionado Especial licenciado Cintrón García. Distinto a la contención de la notario Vélez Echevarría, no podemos "concebir la repetida incomunicación postal entre [ella] y la Oficina del Director de Inspección de Notarías . . .". La remisión en bloque de todos los índices nos permite inferir que incumplió periódicamente con ese deber, y que no fue hasta luego de ser requerida que lo hizo tardía y masivamente.

Aunque, ciertamente, su reducida práctica notarial —"microscópica" al decir del Comisionado Especial— no le-

sionó intereses ajenos y su omisión es atribuible a su evidente inactividad notarial, nos causa seria inquietud su insistente postura de que dio cumplimiento a tiempo con ese deber. La prueba revela todo lo contrario, así como temeridad de su parte.

En estas circunstancias, en abono de nuestro compromiso de lograr la mejor práctica notarial en Puerto Rico, *resolvemos que procede, como sanción disciplinaria, su suspensión por dos (2) años del ejercicio de la notaría.*

*Se dictará la correspondiente sentencia.*

La Juez Asociada Señora Naveira de Rodón y los Jueces Asociados Señores Hernández Denton y Alonso Alonso disienten, pues limitarían la sanción disciplinaria a nueve (9) meses.